## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Idalina PARENTE,<br><br>                          **Plaintiff,**<br><br>       **v.**<br><br>CAROLYN COLVIN, Acting Commissioner<br>of Social Security,<br><br>                          **Defendant.** | Civ. No. 15–1950 (KM)<br><br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

Idalina Parente brings this action pursuant to 42 U.S.C. § 405(g) to review a final decision of the Commissioner of Social Security ("Commissioner") denying her claims for Title II Disability Insurance Benefits ("DIB"). For the reasons set forth below, the decision of the Administrative Law Judge ("ALJ") is AFFIRMED.

## I.    BACKGROUND

Ms. Parente seeks to reverse an ALJ's finding that she was not disabled from March 7, 2010, the alleged onset date, through December 31, 2012, her date last insured. (R. 10–18)

Ms. Parente applied for DIB benefits on March 16, 2012. (*E.g.*, R.164–72) Those claims were denied initially (R. 85–89) and on reconsideration (R. 92–94). On November 21, 2013, following a hearing at which Parente testified, an ALJ found that Parente was not under a "disability" as defined in the Social Security Act. (R. 15–27) On February 12, 2015, the Appeals Council denied Parente's request for review (R. 1–5), rendering the ALJ's decision the final decision of the Commissioner. Ms. Parente now appeals that decision.

## II.   DISCUSSION

To qualify for Title II DIB benefits, a claimant must meet the insured status requirements of 42 U.S.C. § 423(c). To qualify, a claimant must show that she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted (or can be expected to last) for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see, e.g., Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 503 (3d Cir. 2009).

### A. Five-Step Process and this Court's Standard of Review

Under the authority of the Social Security Act, the Social Security Administration has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. Review necessarily incorporates a determination of whether the ALJ properly followed the five-step process prescribed by regulation. The steps may be briefly summarized as follows:

**Step 1:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, move to step two.

**Step 2:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, move to step three.

**Step 3:** Determine whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A. (Those Part A criteria are purposely set at a high level, to identify clear cases of disability without further analysis.) If so, the claimant is automatically eligible to receive benefits; if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).

2

**Step 4:** Determine whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). If not, move to step five.

**Step 5:** At this point, the burden shifts to the SSA to demonstrate that the claimant, considering her age, education, work experience, and RFC, is capable of performing jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91–92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

As to all legal issues, this Court conducts a plenary review. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). As to factual findings, this Court adheres to the ALJ's findings, as long as they are supported by substantial evidence. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citing 42 U.S.C. § 405(g)). Where facts are disputed, this Court will "determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (internal quotation marks and citation omitted). Substantial evidence "is more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Id.* (internal quotation marks and citation omitted).

> [I]n evaluating whether substantial evidence supports the ALJ's findings ... leniency should be shown in establishing the claimant's disability, and ... the Secretary's responsibility to rebut it should be strictly construed. Due regard for the beneficent purposes of the legislation requires that a more tolerant standard be used in this administrative proceeding than is applicable in a typical suit in a court of record where the adversary system prevails.

*Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (internal citations and quotations omitted). When there is substantial evidence to support the ALJ's factual findings, however, this Court must abide by them. *See Jones*, 364 F.3d

at 503 (citing 42 U.S.C. § 405(g)); *Zirnsak*, 777 F.3d at 610–11 ("[W]e are mindful that we must not substitute our own judgment for that of the fact finder.").

This Court may, under 42 U.S.C. § 405(g), affirm, modify, or reverse the Secretary's decision, or it may remand the matter to the Secretary for a rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 865–66 (3d Cir. 2007) (not precedential).

## B. The ALJ's decision

### Step 1

At step one, ALJ Dennis O'Leary found that Ms. Parente had not engaged in substantial gainful activity from the alleged onset date of March 7, 2010, through the date last insured of December 31, 2012. (R. 17)

### Step 2

At step two, the ALJ found that Ms. Parente had the following severe impairment: "status-post right ankle fracture." (R. 17) He rejected her claim that she suffered from depression that was severe. As to the four relevant mental impairment factors, *see* 20 C.F.R. § 404.1520a(D)(1), he found mild limitations in the areas of daily living, social functioning, and concentration, persistence or pace. He found mild or no limitation in the area of episodes of decompensation.

### Step 3

At step three, the ALJ determined that Ms. Parente's impairment or combinations of impairments did not meet or medically equal the severity of one of the listed impairments, 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A. (R. 19) He appropriately applied medical listing 1.02 as to major dysfunction of a joint, and found no inability to ambulate effectively.

4

**Step 4 – RFC/Ability to perform past work**

The ALJ then determined Ms. Parente's RFC thus:

**5.  After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant must alternate between sitting and standing at will and is limited to simple, repetitive tasks.**

(R. 19) Because this is the crux of Parente's challenge to the ALJ's conclusions, I summarize the ALJ's treatment of the evidence in some detail.

The ALJ noted Parente's claims of back and foot problems, depression and orthopedic neuropsychiatric problems. Parente testified that she worked for 4–5 years doing cleanup at construction site, and also as a teacher's aide. (R. 19)

Her broken ankle resulted from a fall on the stairs. (R. 19) She testified that she was in pain, that she could not do anything, that she sometimes uses a cane, that she can stand for a half hour, that she screams and cries, and that she is nervous and depressed. The household chores, she says, are all done by others. She is afraid to drive, and has done so recently only to obtain the medication she takes for depression and pain. (R. 19–20)

The ALJ found that the symptoms were not inconsistent with the medically determinable impairments, but did not fully credit Parente's statements about the intensity, persistence, and limiting effects of her condition.

The surgery for the ankle in early 2010 was successful, and the August 2010 imaging showed the ankle mortise to be well-maintained, with no fracture or effusion, although with patches of osteopenia. Treatment has been conservative: chiefly physical therapy and Naprosyn, an anti-inflammatory drug. No specialist has been consulted. (R. 20)

Clinical findings, the ALJ found, did not support the claims of debilitation. A July 2010 examination (post-surgery) showed minimal swelling,

5

some limitation in flexion, and some pain while walking. Her extremities had normal range of motion and muscle power; neurological examination was grossly intact. Examinations through 2010, 2011, and 2012 had similar results. (R. 20)

In April 2011, Parente had a stress test, which she performed successfully, stopping when she had achieved the target heart rate. In March 2012, Parente complained of back pain from prolonged standing and also at night. Physical examination was within normal limits, as before. Imaging of the thoracic and lumbar spine was not unusual, showing only mild scoliosis, normal vertebral bodies and disc spaces, and no evidence of subluxation or fracture. (R. 21)

The most recent examination, in June 2012, was consistent with the earlier ones, showing intact range of motion, muscle strength, and nothing unusual neurologically. The doctor noted that the patient limped, but made no further findings. (R. 21)

In short, the ALJ found that follow-up treatment had been conservative and intermittent, without the consultation of specialists, and that Ms. Parente's complaints were not credible as to the extent of her pain and limitations. (R. 21)

Depression and anxiety, the ALJ found, were controlled with medication prescribed by her primary physician. There had been no hospitalization, emergency care, or even therapy. An episode of depression in January 2011 was short-lived and attributable to the unexpected death of her brother. (R. 21)

The ALJ discussed, and gave appropriate reasons for discounting, portions of the evidence.

First was the testimony of Parente herself. It was, as noted above, not consistent with medical evidence. Parente (who immigrated to the U.S. 30 years ago, at the age of 17) claimed to be unable to communicate in English, but she holds a certificate to teach as a substitute in the public schools; was able to communicate with the intake person in connection with this claim; and passed

6

her citizenship test orally and in writing. Parente also admitted that her construction work was for a company owned by her husband but in her name, because he had been debarred from public contracts on grounds of fraud.

Second was the opinion of I. Ahmad, M.D., dating from March 2012. Ahmad made a finding of total disability. His underlying medical conclusions, however, were inconsistent with that conclusory opinion. These were typified by some decreased range of motion in the ankle, cervical spine and lumbar spine, weak grasp, and some spasms in the back and neck. There was no link between these findings and the conclusion of disability. This was a one-time medical examination without review of records. (R. 23–24)

Third was a letter from a physical therapist, Carl Malatesta. He stated that there was pain, swelling, and limitation of movement, and concluded that she was "limited" with respect to weight-bearing activities. This the ALJ discounted because the extent of limitation was not quantified or explained, and because the letter dated from 2010, in the post-surgery period.

Fourth was an opinion of Parente's treating physician, Maria Gabriela Koliver, M.D., dating from April 2012. Dr. Koliver stated that Parente had limitations with lifting and carrying (without specifying a weight limit); could stand or walk less than 2 hours in a work day, could sit only up to 6 hours in a work day, and had limitations with pushing/pulling and traveling. These conclusions the ALJ discounted based on Dr. Koliver's own treating notes (as well as other evidence in the case). The only notations showed a slight limp, some decreased range of motion, and swelling. The limitations on lifting and carrying were not quantified by weight. (R. 24–25)

Fifth was a report by Malcolm Hermele, M.D., dating from June 2012. This indicated chronic bronchitis and probable restrictive pulmonary disease. The ALJ found, however, that there was nothing in the treatment records indicating asthma, that examinations of her breathing functions have been within normal limits, and that the relevant treatment was intermittent care of an upper respiratory infection. (R. 25)

Sixth, a psychological examination by Paul Fulford, Ph.D., showed that Parente was oriented, well groomed, and normally behaved. She experienced sadness. Fulford's diagnosis was dysthymic disorder with a Global Assessment of Functioning of 65, indicating only some mild symptoms or some difficulty with social, occupational or school functioning. Although Dr. Fulford made a finding of borderline intellectual functioning, the ALJ found this to be inconsistent with her work history and her obtaining a GED. Fulford's conclusion of disability was discounted as inconsistent with his findings, as well as the other evidence. (R. 21–22, 25)

Against that backdrop, the ALJ was able to credit the opinions of two state agency consulting physicians, Toros Shahinian, M.D., and Nancy Simpkins, M.D. Toros found limitations on lifting and carrying (20 pounds occasionally, 10 frequently) He found that Parente could work at a light exertional level, with a reduction to 2 hours of walking/standing and a complete limitation from various climbing activities, as well as frequent limitation in climbing stairs, stooping, kneeling, crouching and crawling. Even moderate exposure to workplace hazards and environmental extremes was to be avoided. Psychiatric limitations were found to be mild. (R. 22, 59 *et seq.*) Dr. Simpkins reexamined the evidence and affirmed the opinions of Dr. Toros. (R. 76–78)

On this record, in a balanced ruling, the ALJ found that Parente's limitations were real, but not disabling. Based on the medical evidence and the opinions of state agency consultants , the ALJ determined that the impairments would exclude much work, but not all work. (R. 25) The excluded work, however, included her past jobs in construction cleanup and substitute teaching; the ALJ found Parente unable to perform past relevant work. *See* 20 C.F.R. § 404.1565.

### Step 5

At step five, the ALJ considered Ms. Parente's "age, education, work experience, and residual functional capacity," and found that there are jobs that exist in significant numbers in the national economy that Parente can perform. (R. 26–27) At the age of 48, she was a "younger individual" on the date last insured. Her education was limited, but she was able to communicate in English. (R. 26)

The ALJ noted that Ms. Parente could perform at a light exertional level, but also that there were additional limitations. Consequently, he could not simply find her not disabled as a matter of course. *See* Medical-Vocational Rule 202.18. To determine the extent to which her additional limitations excluded her from the unskilled light occupational base of available employment, the ALJ consulted a vocational expert. The expert concluded that, for a person of Ms. Parente's age, education, work experience, and residual functional capacity, there were three representative occupations available: microfilm mounter (DOT #208.685-022 (approximately 150,000 jobs nationally); sealing machine operator (DOT # 690.685-154 (approximately 20,000); ticketer (DOT # 229.587-018) (approximately 120,000). Such jobs, the expert noted, are learned by demonstration and do not require fluency in English. The ALJ accepted these conclusions. (R. 26–27)

The foregoing findings compelled a conclusion of "not disabled." (R. 27)

### C. Ms. Parente's appeal

Ms. Parente challenges the ALJ's determination of her RFC, and also the vocational expert's conclusion, because it was based on a hypothetical question that incorporated the RFC. Essentially, Ms. Parente's challenge is that the ALJ accepted the conclusions of the state physicians, Shahinian and Simpkins, but did not incorporate their limitations of "2 hours standing/walking" in his statement of the RFC. (RFC quoted at p. 5, *supra*.)

9

To begin with, no doctor's opinion must be taken in its entirety, nor does any medical opinion bind the ALJ's determination of disability. *See Wilkinson v. Comm. Of Soc. Sec.,* 558 F. App'x 254, 256 (3d Cir. 2006). The requirements are simply that the ALJ consider all the evidence, weigh it, and give reasons for discounting certain evidence. *See* 20 C.F.R. § 404.1527(d) (no special deference to opinion evidence on issues reserved to Commissioner). If substantial evidence supports the ALJ's conclusions, then they must be affirmed.

It must be remembered that the RFC is a conclusion, usually phrased in brief, as to the kinds of functions the claimant can perform. It is not a detailed medical diagnosis or summation of the evidence. The ALJ thoroughly discussed the evidence. He credited ample evidence to the effect that the impairments were not debilitating. The ALJ had before him the opinion of the state physicians, and of Dr. Koliver, Parente's treating physician, who said she could stand or walk less than 2 hours in a work day, and could sit up to 6 hours in a work day.

The ALJ's formulation of the residual functional capacity effectively incorporated those sitting/standing limitations. Over the course of an 8 hour work day, he ruled, Parente must be permitted to "alternate sitting or standing *at will.*" (R. 19 at ¶5) That necessarily implies that, over the course of an 8 hour work day, Parente would be permitted to split sitting and standing as she found comfortable, whether 6:2 hours or some other ratio. In short, the ALJ's determination of the residual functional capacity clearly took into account what Parente says it omitted; there is no need for the RFC to parrot the statements of the physicians, so long as the substance of the medical evidence is reflected there.

Because the RFC is not defective, it follows that the hypothetical posed to the vocational expert was not defective, either. *See Rutherford v. Barnhart,* 399 F.3d 546, 554 (3d Cir. 2005) (vocational expert testimony meets the substantial

10

evidence standard when the hypothetical question posed to the VE accurately conveys the limitations permissibly found by the ALJ).[1]

## III.   CONCLUSION

For the foregoing reasons, the ALJ's decision is AFFIRMED.

Dated: March 24, 2016

_____
**KEVIN MCNULTY**
**United States District Judge**

---

[1] At any rate, the premise of Parente's argument—that a 2 hour standing limit would require a finding that she was capable of only sedentary, not light, work, and that a sedentary classification would require a finding of disability—is dubious.